IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MINNESOTA ELEVATOR, INC., ) | |
| ) | 08 CV 4662 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Magistrate Judge |
| IMPERIAL ELEVATOR SERVICES, ) | Arlander Keys |
| INC., d/b/a/ BARNARD ) | |
| ELEVATOR COMPANY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Minnesota Elevator, Inc.'s ("Minnesota's") Motion for Summary Judgment. Fed. R. Civ. P. 56. Minnesota argues that summary judgment is warranted, because Imperial Elevator Services, Inc.'s ("Barnard") only defense to Minnesota's breach of contract claim[1] fails as a matter of law. For the reasons set forth below, Defendant's Motion is Granted.

## BACKGROUND FACTS

Since 1971, Minnesota has manufactured, installed, and serviced various types of elevators and elevator parts. Minn. Fact Stmt. at ¶ 1. Barnard, an Illinois company[2], installs

---

[1] Having granted Minnesota's Motion for Summary Judgment on its breach of contract claim, the Court need not address Minnesota's unjust enrichment claim, which is based upon the same facts.

[2] Minnesota is a Minnesota company, with its principal place of business in Mankato, Minnesota. Because the parties are diverse, and the amount in controversy exceeds the statutory

elevators, and repairs and services commercial and industrial machinery and equipment. Beginning in the late 1990s, Barnard began purchasing elevator materials from Minnesota. *Id.* at ¶ 3.

The parties' business interactions followed a typical pattern: Barnard would contact Minnesota for a price quote. If the parties agreed on a price, Barnard would send a purchase order, and Minnesota would ship the requested goods with an invoice. *Id.* at ¶¶ 4-6. The Barnard purchase orders specified the type, quantity, and price of the materials requested, and identified the Barnard project to which the purchase order applied. Minnesota's corresponding invoices confirmed the type and quantity of the materials that had been shipped, as well as the price, payment terms, and shipment method for that order. Notably, Minnesota's invoices also provide that a "[f]inance charge of 1.5% per month will be charged on past due amounts." *Id.* at ¶ 7.

The parties continued doing business without notable incident—with Barnard paying Minnesota in full for numerous orders--, until the Spring of 2005. *Id.* at 22. Between May and August of 2005, Minnesota shipped to Barnard elevator equipment for five separate properties,[3] consistent with the business practices

minimum, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

    [3] Those properties were all located in the Chicagoland area: 1) 4968 N. Milwaukee (purchase order dated 6/24/05); 2) 6745 N.

described above. The total of the invoices for these materials amounts to $213,847.74. Despite the fact that it has been paid for substantially all of its work[4] related to installing these materials, Barnard has paid Minnesota only $13,006.21, leaving an outstanding principle balance of $200,841.53. *Id.* at ¶¶ 11-12.

On August 18, 2008, Minnesota filed suit against Barnard for breach of contract and unjust enrichment. In response, Barnard claims that it was entitled to over $200,000 in credits from Minnesota, which offset its liability for the materials purchased under the five contracts at issue in this suit. Barnard claims that it incurred extra labor and material costs, stemming from deficiencies in certain materials supplied by Minnesota. Although the majority of the alleged credits stem from materials shipped under purchase orders placed prior to May of 2005, and

_____

Clark (purchase order dated 5/25/05); 3) Great Lakes Navy Base (purchase order dated 8/8/05); 4) 663 W. Barry (purchase order dated 7/13/2005); and 5) 720 W. 47th St. (purchase order dated 7/12/2005).

[4] Barnard denies that it has been paid for substantially all of its work, but the Record does not support Barnard's denial. In its Response to ¶ 11 of Minnesota's Statement of Facts, Barnard denies that it has been paid for all or substantially all of its work on these five jobs. In support of its denial, Barnard cites to pages 79-81 of Mr. Figliulo's deposition testimony, wherein Minnesota's counsel asks Mr. Figliulo if he had been paid for his work at the West 47th Street property, and Mr. Figliulo admits that Barnard has been paid "[f]or the most part." Repeatedly in his deposition testimony, Mr. Figliulo admits that Barnard has been paid, or substantially paid, for the work on the five contracts at issue. *See, e.g.,* Figliulo's Dep. at pp 10-11, 29-30, 50, 58, 70, 79-80. Barnard's improper denial is deemed an admission.

under which Barnard has paid Minnesota in full, Barnard argues that the existence of these credits prevents Minnesota from establishing its breach of contract claim.

Barnard has not produced any contemporaneous documentation evidencing either the existence of the purported deficiencies or the credits it claims that Minnesota had acknowledged. Instead, Barnard has produced spreadsheets and letters that it prepared during the course of this litigation, which reflect Barnard's calculations of the claimed credits, as well as an affidavit from its President, Stephen Figliulo, claiming the existence of the defects and Barnard's alleged entitlement to credits.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) ; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To survive summary judgment, the non-moving party must offer more than "mere conclusory" allegations. *Nowak v. St. Rita High*

4

*School*, 142 F.3d 999, 1002 (7th Cir. 1998). *See also Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The non-moving party must offer more than a "metaphysical doubt as to the material facts.") The non-moving party will lose on summary judgment if he cannot present sufficient evidence to support each element of his case for which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, the Court will disregard all facts not properly supported by the record. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

In addition to adhering to Rule 56 of the Federal Rules of Civil Procedure, parties must be in strict compliance with Northern District of Illinois Local Rule 56.1. Under Local Rule 56.1, the party moving for summary judgment must submit a statement of material facts, written in short numbered paragraphs, along with citations to admissible evidence. Loc. R. 56.1(a); *Smith v. Lamz*, 321 F.3d 680, 682 (7th Cir. 2003). The opposing party must respond to each paragraph by either admitting or denying the allegations, and specifically citing to supporting materials showing the existence of a genuine factual dispute. Loc. R. 56.1(b)(3)(A). The parties must support all disputed facts with "specific references to . . . parts of the record." Courts need not "scour the record in an attempt to locate the relevant information supporting the Rule 56.1 claims." *Waldridge*

*v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

The Seventh Circuit has repeatedly "sustained the entry of summary judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Id.*; *see also Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000) (All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary materials.") If the party opposing summary judgment fails to identify supporting material in the record, the moving party's statements will be deemed admitted, assuming these statements are properly supported in the record. Loc. R. 56.1(b)(3)(B); *Garrison v. Burke*, 165 F.3d 565, 567 (7th Cir. 1999).

## II.  Plaintiff Has Established Its Breach of Contract Claim

Under Illinois law[5], "the elements of a breach of contract cause of action are '(1) offer and acceptance, (2) consideration,

---

[5] Illinois choice of law rules indicate that Illinois law applies. *Hinc v. Lime-O-sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004) (federal courts sitting in diversity apply the forum state's choice of law provisions to determine the applicable substantive law).  While the place of contracting, the place of incorporation, and the place of the parties' businesses weigh equally in favor of Illinois and Minnesota, the fact that the goods that are the subject of this contract dispute were delivered to and installed in Illinois indicates that Illinois has the most significant contacts to the dispute.

(3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages.'" *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007)(citations omitted).   In this case, Barnard has effectively admitted each of the elements to satisfy Minnesota's breach of contract claim.

In its Response to Minnesota's Rule 56 Statement of Facts, Barnard attempts to deny key elements of Minnesota's breach of contract claim- i.e., that it received and accepted the goods from Minnesota pursuant to the terms of the purchase agreements and invoices; that it then installed those goods at various jobsites; and that Barnard was paid for most of its work by its own customers.   However, Barnard's Response fails to comply with Local Rule 56.1's requirements, resulting in many critical facts being deemed admitted.

For example, ¶ 10 of Minnesota's Statement of Facts asserts that Barnard admits that it received, accepted, and installed the elevator packages on each of the five contracts, citing to the deposition testimony of Barnard's President Stephen Figliulo.   In its Response to the Statement of Fact, Barnard denies the assertion, citing to both Mr. Figliulo's short affidavit, as well as "portions of cited deposition," without identifying which of the seven citations might support the denial.   Barnard's Resp. to ¶ 10.   Barnard's reference to the "cited deposition" is

inappropriate. *See Ammons v. Aramark Uniform Services, Inc.,* 368 F.3d 809, 817-18 (7th Cir. 2004) (upholding decision to strike responses where the opposing party failed to provide specific page references.) More importantly, a fair reading of both Mr. Figliulo's affidavit and deposition testimony indicate that Defendant's ambiguity was intentional; neither Mr. Figliulo's affidavit nor the deposition testimony cited by <u>Minnesota</u> (and subsequently referenced by Barnard) supports Barnard's denial. To the contrary, the evidence indicates that Barnard did admit to receiving, accepting[6], and installing the elevator packages on each of these five contracts. The Court strikes the denial and deems Barnard to have admitted the critical ¶ 10 of Minnesota's Statement of Material Facts[7].

------

[6] At times in his deposition testimony, Mr. Figliulo directly admits that Barnard "accepted" the goods in question, whereas at other times he merely states that Barnard received and then installed the goods. Under Illinois law, the fact that Barnard installed the goods is sufficient to constitute its acceptance of the goods. *S.A.M. Elecs., Ins. Osaraprasop,* 39 F. Supp. 2d 1074, 1086 (N.D. Ill. 1999) ("'Acceptance of good occurs when the buyer . . .does any act inconsistent with the seller's ownership'. . . . .[R]esale of good is 'an act inconsistent' with the seller's ownership.'") (citations omitted).

[7] Similarly, Barnard denies ¶ 8 of Minnesota's Statement of Facts, that each Barnard purchase order and corresponding invoice constituted individual contracts, despite Mr. Figliulo's admission of the same at his deposition. Figliulo's Dep. at p. 14. As discussed below, Mr. Figliulo's subsequent affidavit is insufficient as a matter of law to controvert Minnesota's assertion, and ¶ 8 is deemed admitted.

## III. Setoff is Not An Affirmative Defense to Breach of Contract

Barnard next attempts to avoid summary judgment by arguing that Minnesota did not fully perform under the contract, because it shipped Barnard defective goods and, therefore, did not fulfill its obligations under their contract. The Seventh Circuit rejected precisely that argument more than one decade ago. *See, e.g., Schieffelin & Co., v. Valley Liquors, Inc.,* 823 F.2d 1064, 1065-66 (7th Cir. 1987) ("Schieffelin's claim is factually and legally distinct from Valley's). Once Barnard accepted the goods, the appropriate vehicle to address the damage caused by allegedly defective goods is a counterclaim for set-off or recoupment. *See S.A.M.,* 39 F. Supp.2d at 1086-87 (once the buyer "has accepted defective goods," his remedy is to "bring an action for nonconformity under §5/2-677.")

Illinois law "requires a defendant's claim in the nature of set-off or recoupment to be pleaded as a counterclaim." *Schieffelin & Co.,* 823 F.2d at 1068. *See also, Citadel Group Ltd. V. Washington Reg'l Med. Ctr.,* No. 07 CV-1394, 2009 WL 1329217, at *4 (N.D. Ill. May 13, 2009) (striking setoff defense because "a claim for setoff is not properly pled as an affirmative defense.") *Ace Hardware Corp. v. Marn, Inc.,* No. 06-CV-5335, 2008 WL 4286975, at *8 (N. D. Ill. Sept. 16, 2008). In these circumstances, once the buyer "accepts" the goods, the seller has fulfilled its obligations and stands in a position to

enforce the buyer's obligations under the contract. *S.A.M. Elecs.*, 39 F. Supp. 2d at 1086; *see also, Ace Hardware Corp. v. Marn, Inc.*, NO. 06-CV- 5335, 2008 WL 4286975, at *8 (N.D. Ill. Sept. 16, 2008) ("a claim for setoff, or recoupment for that matter, is not an affirmative defense because it does not destroy the plaintiff's right of action.") The law recognizes a buyer's subsequent claim that accepted goods are defective as substantively and procedurally distinct from the underlying breach of contract claim; as such, a claim that accepted goods are defective will not defeat an otherwise meritorious breach of contract claim. *Id.*

Clearly, Barnard's attempt to repackage its setoff claim as an attack on the legitimacy of Minnesota's breach of contract claim must fail. *Ace Hardware,* 2008 WL 4286975, at *8 ("A claim for setoff or recoupment is not technically a 'defense' at all, but must be plead as a counterclaim pursuant to Rule 13.") Barnard is required under Illinois law to plead any potential setoff as a counterclaim, and its failure to do so renders the potential existence of defective goods irrelevant for purposes of this motion.

## IV. Setoff Credits Are Limited to the Same Contract

Minnesota also points out that, even if Barnard had properly plead its setoff claim as a counterclaim, which it has not, Barnard's claim for setoff credits would still fail, because

10

Barnard is inappropriately attempting to apply credits for goods purchased under previous contracts to the contracts at issue in this case. "It is well recognized that under Illinois law, a set-off counterclaim is limited to damages arising out the same contract as the claim for the goods." *Inspec Foams, Inc. v. The Claremont Sales Corp.*, No. 01 C 8539, 2002 Wl 1765630, at *2 (N.D. Ill. July 30, 2002). *See also, To-Am Equip. Co., Inc. v. Mitsubishi Caterpillar forklift Am.,* 913 F. Supp. 1148, 1155-56 (N.D. Ill. 1995) (granting summary judgment where party sought to have credit applied to a different contract).

Minnesota contends that the purchase orders and invoices associated with each specific job constitute unique and separate agreements[8]-- a point corroborated by Mr. Figliulo at his deposition. Figliulo Dep. at p. 14, Ex. 2 to Minn. Fact Stmt. And because the bulk of the credits Barnard now claims stem from contracts that were created and completed prior to the creation of the contracts at issue in the instant case, Barnard's claim that these alleged credits offset its financial obligations on the current contracts must fail. *Inspec Foams*, 2002 Wl 1765630, at *2.

---

[8] Minnesota asserts that only $60,483.57 of the $203,995.59 that Barnard is attempting to claim as credits arises out of any of the five contracts at issue in this case. The balance of the credits relates to earlier, unrelated contracts.

Barnard does not dispute the law, but has attempted to create a genuine issue of fact by means of an affidavit from Mr. Figliulo. In his affidavit, Mr. Figliulo reverses course from his deposition testimony, and instead claims that "[t]he purchase orders and invoices were issued for various separate projects, but all of those invoices and purchase orders were done under one overall agreement." Ex. 1 to Barn.'s Rsp. To Minn. Fact Stmt. Notably, neither Barnard nor Mr. Figliulo has submitted a copy of this agreement, identified any of its terms, or explained when such an agreement was executed. And Mr. Figliulo has made no effort to explain the inconsistency between his deposition testimony and his subsequent affidavit statements.

Caselaw is clear that a self-serving affidavit that is both lacking detail and support in the Record, AND that contradicts prior deposition testimony is inadequate evidence as a matter of law. Of course, reliance upon a self-serving affidavit can be sufficient evidence in summary judgment proceedings. *Kaba v. E.A. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). "[A] self-serving affidavit supported by facts in the record [can] defeat summary judgment," and the record "may include the self-serving affidavit itself, provided that the affidavit meets the usual requirements for evidence on summary judgment-including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial," *Buie v.*

*Quad/Graphics, Inc.,* 366 F.3d 496, 504 (7th Cir.2004) (quotation marks and citations omitted).

But Mr. Figliulo's affidavit falls woefully short of this standard; conspicuously absent are any details whatsoever regarding the creation, execution, terms, or physical existence of such an agreement. Mr. Figliulo's affidavit contains nothing more than conclusory statements, without any support in the record, and therefore, cannot create "a triable issue of fact." *Hall v. Bodine Elec. Co.,* 276 F.3d 345, 354 (7th Cir. 2002). *See also* Everett v. Cook County, 2010 WL 1325681, at *17, n.1 (N.D. Ill., Mar. 30, 2010 ("Self-serving affidavits that are not part of the record cannot be used to create a genuine issue of material fact on a motion for summary judgment.) Moreover, the Court will not permit Barnard to stave off summary judgment by submitting an affidavit from Mr. Figliulo that contradicts his prior deposition testimony. *LaFary v. Rogers Group, Inc.,* 591 F.3d 903, 908 (7th Cir.2010) (holding that a party "cannot defeat a motion for summary judgment by 'contradict[ing] deposition testimony with later-filed contradictory affidavits' "); *Patterson v. Indiana Newspapers, Inc.,* 589 F.3d 357, 359 (7th Cir.2009) ("The district court also disregarded affidavits submitted by [Plaintiffs] because they 'directly contradict[ed]' their deposition testimony.)

Therefore, the Court agrees that any credit[9] to which Barnard may be entitled has application only to the specific purchase order and invoice under which it arose. However, because Barnard has failed to plead setoff as a counterclaim, Barnard's potential entitlement to credits is beyond the scope of this Court's decision.

## V. Minnesota is Entitled to Damages, Including Prejudgment Interest.

In this case, the undisputed evidence shows that, under the terms of the applicable purchase orders and invoices, Barnard received, accepted and installed the requested goods from Minnesota, and even though Barnard's customers paid Barnard for most of the work performed, Barnard has paid Minnesota only $13,006.21 of the total principal balance of $213,847.74.. Because Minnesota has established that it fully performed its contractual obligations, and because Barnard has offered insufficient evidence to establish an affirmative defense or raise a material issue of fact, Minnesota is entitled to summary judgment on its breach of contract claim. Therefore, the Court

---

[9] Barnard's evidence concerning the existence of such credits is underwhelming. Barnard claims that Minnesota orally promised the credits, but cannot identify those discussions with any particularity, including the dates of and some of the participants in many of those conversations. Barnard has also been unable to produce even one contemporaneous document evidencing either the existence of the purported defects or the promise of a credit. Importantly, Barnard bears the burden of proof on any counterclaim for setoff. *Ace Hardware Corp*, 2008 WL 4286975 at *8.

awards Minnesota the outstanding balance of $200,841.53.

Next, the Court must decide how much, if any, prejudgment interest to award to Minnesota on this outstanding balance. Each of the invoices that Minnesota sent to Barnard provides that a "Finance charge of 1/5% per month will be charged on past due amounts." Minn. Fact Stmt at P 7, Ex. 4. Courts in this district have ruled that similar language on a seller's invoice was sufficient to create a binding penalty clause between the parties. *See, e.g., Inspec Foams,* 2002 WL 1765630, at *3 ("overdue payment interest penalty clauses in a seller's shipping documentation are not considered material alterations to the parties' contract and thus are incorporated into the parties' contract terms"); *International Adhesive Coating Co., Inc. v. James River Paper* Co., *Inc.,* 1990 WL 92879, at *5 (N.D. Ill. June 26, 1990) (enforcing provision in seller's purchase order acknowledgment form for a 1 % per month interest charge for late payment, under § 2-207[10]).

Barnard does not dispute Minnesota's legal arguments, but instead argues that Minnesota agreed to waive the interest payments. Specifically, in his affidavit, Mr. Figliulo states that "[t]he finance charge terms in the invoices did not apply to

---

[10] The *International Adhesive Coating* court is referring to 810 Ill. Comp. Stat. § 5/2-207, which codifies the U.C.C.'s provisions regarding the acceptance of additional terms in a contract.

the claimed invoices because [Minnesota] verbally agreed to waive those terms given the volume of the work, the defective parts, and because [Minnesota] was frequently late in delivering the materials to Barnard." Figliulo Aff. at ¶ 2, Ex. A to Def's Resp to Minn. Fact Stmt. Beyond Mr. Figliulo's conclusory statement in his affidavit, Barnard's position finds no support in the Record. Barnard has not submitted any documentation evidencing such an agreement, and has not submitted evidence concerning precisely who authorized the waiver of the interest penalty, when, and in what manner. Nor has Barnard introduced any evidence indicating that Minnesota was late in delivering materials to Barnard or that Barnard's volume of work warranted such favorable terms.

As discussed above, this type of unsupported, self-serving affidavit, standing alone, is insufficient to avoid summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001) ("Conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment. We repeatedly have held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.") *Drake v. Minnesota Mining & Mf. Co.,* 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific

concrete facts establishing the existence of the truth of the matter asserted.")

Therefore, the Court finds that Minnesota is entitled to the interest penalty described in its invoices. According to Minnesota's own calculations, applying this rate from the date the invoices became overdue until the filing of its Motion for Summary Judgment on January 22, 2010, the interest due under this overdue interest clause amounted to $202,022.94. The Court directs Minnesota to submit a new estimate for the prejudgment interest award, calculated in accordance with the penalty clause on the invoices, which accounts for the time between the filing of its summary judgment motion and the date of this Court's judgment.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is Granted. Defendant has failed to proffer evidence giving rise to a disputed issue of material fact on Plaintiff's contract and unjust enrichment claims. Therefore, summary judgment is warranted, and judgment is entered for Plaintiff in the amount of $200,841.53, plus the contractual amount of prejudgment interest.

DATE: July 1, 2010          E N T E R E D:


Judge Arlander Keys
United States Magistrate Judge